# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 09-0514-WS-M ) |
| SHIRLEY FAYE JENKINS, etc., et al., | ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the motion of plaintiff Hartford Casualty Insurance Company ("Hartford") for summary judgment with respect to defendant Shirley Faye Jenkins ("Shirley"). (Doc. 72). Hartford and Shirley have filed briefs and evidentiary materials in support of their respective positions, (Docs. 73-75, 85-92, 105), and the motion is ripe for resolution. After carefully considering the foregoing, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1), Hartford issued a payment bond on behalf of defendant Mark IV Constructors, Inc. ("Mark IV") in connection with the construction of Gulf Shores High School ("the Project"). Third-party defendant Richard Jenkins ("Richard") was the principal in Mark IV. Some time previously, Richard and his then-wife Shirley executed a general indemnity agreement ("the Agreement"). McCorvey Construction Corporation ("McCorvey"), a subcontractor on the Project, sued Mark IV and Hartford for non-payment for labor and materials. Based on the jury's verdict, a final judgment was entered against Mark IV and Hartford. Hartford also received judgment on its crossclaim against Mark IV, and third-party claim against

Richard. Hartford sues Shirley for indemnity under the Agreement.[1]

## DETERMINATIONS OF UNCONTROVERTED FACT

The Agreement provides in pertinent part as follows:

> The Indemnitors will indemnify the Surety against any and all liability, losses, and expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) which the Surety may sustain or incur (1) by reason of having executed any Bond issued hereunder, (2) by reason of the failure of the Principal or any of the other indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) in enforcing any of the covenants or conditions of this Agreement.

(Doc. 75, Exhibit A at 1, ¶ V).

The Agreement is executed by Hartford, Richard and Shirley. (Doc. 75, Exhibit A at 2-3).[2]

---

[1] Hartford also sues defendants Scott Jenkins and Michele Guyton, the children of Richard and Shirley, for avoidance of an allegedly fraudulent transfer. Shirley sues Richard and Mark IV for indemnity or contribution. (Doc. 23).

[2] Shirley does not deny executing the Agreement. Instead, she "do[es] not recall" having done so. (Jenkins Affidavit, ¶ 2; Doc. 85 at 5, ¶ 16; *id*. at 19, ¶ 58; *id*. at 20, ¶ 60). She does not thereby create a genuine issue of material fact as to whether she signed the Agreement, especially given that the signature "Shirley Faye Jenkins" appears on the Agreement and that this signature was notarized by a witness who confirmed that Shirley at the time acknowledged that she executed the Agreement. (Doc. 75, Exhibit A at 3). Moreover, Shirley admits that, on or about February 18, 1980 (the date reflected on the Agreement), Richard requested her to execute documents to assist Mark IV in obtaining a surety, (Doc. 23, ¶ 6), which is precisely the purpose of the Agreement. (Doc. 75, Exhibit A at 1). Courts routinely hold that a party's lack of recollection cannot create a genuine issue of material fact in such circumstances. *See, e.g., Brown v. St. Paul Travelers Companies*, 331 Fed. Appx. 68, 70 (2nd Cir. 2009) ("We agree with the District Court that '[p]laintiff's statement, that she has no recollection or record of receiving the employee handbook and arbitration policy, despite the fact that it was distributed on at least six occasions during her employment, is ... not sufficient to raise a genuine issue of material fact.'"); *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002) (plaintiff's testimony that she "does not recall seeing or reviewing" a brochure "does not raise a genuine issue of material fact" in light of affidavits that the brochure was sent to her);

Hartford issued a bond under the Agreement covering the Project. McCorvey, a subcontractor on the Project, made a claim on the bond. (*Id*., ¶ 4). Hartford paid McCorvey $190,000 in settlement of the claim. Shirley has not repaid Hartford. (Doc. 75, Mahler Affidavit, ¶¶ 3, 4, 8; Mahler Deposition at 44).

**CONCLUSIONS OF LAW**

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

---

*Dickey v. Baptist Memorial Hospital*, 146 F.3d 262, 266 n.1 (5th Cir. 1998) ("The mere fact that Dr. Washington does not remember the alleged phone conversation, however, is not enough, by itself, to create a genuine issue of material fact [as to whether it occurred.]"); *Robnett v. Blodgett*, 1992 WL 280980 at *2 (9th Cir. 1992) ("A current lack of recollection" does not create a genuine issue of material fact, because "[a]bsence of proof is not proof of absence").

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116.

In deciding a motion for summary judgment, the Court is required to view the evidence and the reasonable inferences therefrom in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court's review is limited to those legal arguments the parties have expressly advanced.

**I. Liability.**

Hartford's claim is for breach of a contract of indemnity. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (internal quotes omitted).

The uncontroverted facts establish that the Agreement is a valid contract existing between Hartford and Shirley; that Hartford has performed under the contract by paying McCorvey; that Shirley has not performed her agreement to pay Hartford; and that Hartford has been damaged by Shirley's non–payment. Hartford has thus met its initial burden on motion for summary judgment, shifting to Shirley the burden of showing the existence of a genuine issue of material fact.

**II. Defenses.**

Shirley floats an armada of arguments (which she terms affirmative defenses) why the plaintiff should be denied recovery: (1) res judicata; (2) laches; (3) release; (4) executory contract; (5) unilateral mistake; (6) disproportionate bargaining power; (7) bad faith; (8) negligence; and (9) estoppel. The Court examines these in turn.

**A. Res Judicata.**

Hartford named Shirley as a third-party defendant in the McCorvey litigation. The trial judge dismissed Shirley sua sponte at the commencement of trial for lack of personal jurisdiction, because Shirley had not been served with process. (Shirley Affidavit, Exhibit E at 1-2). Shirley argues that these facts establish that Hartford's claim for indemnity is barred by res judicata. (Doc. 85 at 7, ¶ 26; *id*. at 21, ¶ 65).

Shirley offers no law in support for her position other than an Alabama case listing the well-known elements of res judicata, one of which is a prior judgment rendered on the merits. (Doc. 85 at 15, ¶ 49). As Hartford points out, (Doc. 105 at 8), there has been no adjudication on the merits of Hartford's claim against Shirley. Under the Alabama law she invokes, "a dismissal without prejudice does not constitute an adjudication on the merits." *Hundley v. J.F. Spann Timber, Inc*., 962 So. 2d 187, 192 (Ala. 2007) (internal quotes omitted). When the order of dismissal is silent as to whether it is with prejudice, it must be presumed that it is without prejudice and therefore without res judicata effect. *USA Petroleum Corp. v. Hines*, 770 So. 2d 589, 591 (Ala. 1999). Moreover, as a matter of law, a dismissal for want of personal jurisdiction is not an adjudication on the merits and will not support an assertion of res judicata. *Great American Lines, Inc. v. Burks*, 631 So. 2d 907, 908 (Ala. 1993); *Evers v. Taylor*, 437 So. 2d 1271, 1273 (Ala. 1983) ("According to the rule, the dismissal of a complaint due to lack of in personam jurisdiction will not generally act as an adjudication on the merits ...").

Here, Shirley's own evidence establishes that her dismissal from the McCorvey

litigation was based on lack of personal jurisdiction, and Alabama law precludes her from successfully asserting res judicata in that situation. Because Shirley did not offer the McCorvey judge's order of dismissal, the Court cannot assume that he nevertheless dismissed her with prejudice. Indeed, Shirley does not assert that his order used such language. Instead, she suggests that her dismissal *became* one with prejudice when Hartford failed to appeal the dismissal. (Doc. 85 at 15, ¶ 50; *id*. at 21, ¶ 65). All that her authorities hold, however, is that a ruling on the merits becomes final once an appeal from that ruling is dismissed. The question, however, is not whether the trial court's dismissal of Shirley is final but whether it was a ruling on the merits of Hartford's claim against her. As discussed above, it plainly was not.[3] As a matter of law, Hartford's claim for indemnity is not barred by res judicata.

### B. Laches.

The McCorvey litigation was filed in 2000. (Shirley Affidavit, Exhibit F; Richard Affidavit, ¶ 14). Shirley complains that, by waiting until 2009 to sue her, Hartford is guilty of delay constituting laches. (Doc. 85 at 17, ¶ 55). However, as Hartford points out, (Doc. 105 at 5), laches can apply only to equitable claims. "This court has held that laches is an equitable principle and is a defense only to suits in equity, ... or to those proceedings at law which are controlled by equitable principles such as a mandamus proceeding." *Ex parte Sasser*, 730 So. 2d 604, 605 (Ala. 1999) (internal quotes omitted); *accord MacWillie v. Southeast Alabama Gas District*, 539 So. 2d 245, 248 (Ala. 1989) ("The MacWillies' trespass action is an action at law, and laches is not a defense."). Because Hartford asserts no equitable claim against Shirley but only a legal claim for

---

[3]Shirley's authorities also hold that when an appellant dismisses his appeal without prejudice, but the time to file a new appeal has expired, the dismissal of the appeal is effectively with prejudice. That unremarkable proposition has nothing to do with whether the trial court ruled on the merits of Hartford's claim.

contractual indemnity, laches is unavailable as a matter of law.[4]

### C. Release.

Shirley argues vaguely that there is evidence she and Hartford (or perhaps Richard and Hartford) mutually and orally agreed that, upon her divorce from Richard, she would be released from her obligations under the Agreement. (Doc. 85 at 22-23, ¶¶ 67-68). She bases this argument on evidence that Preston Edwards, a representative of Hartford, advised Richard — and later testified at the divorce trial — that Hartford would not continue as surety for Mark IV unless Richard were awarded full ownership. (*Id.* at 4, ¶¶ 9-10; *id.* at 23, ¶ 68). The trouble is that neither Shirley nor Richard asserts in affidavit that any such release agreement was reached, and it is impossible to infer the existence of such an agreement from the mere fact that Hartford was unwilling to serve as surety except with Richard as sole owner.[5] Certainly Shirley has offered no explanation how such an inference can reasonably follow, and the speculation she offers is legally insufficient to avoid summary judgment. *E.g., Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.")

---

[4]For reasons unexplained, Shirley cites federal cases discussing the federal law of laches in actions based on federal question. (Doc. 85 at 11, ¶ 43). Because jurisdiction over this action is founded exclusively on diversity of citizenship, Alabama law of laches controls. *Mile High Industries v. Cohen*, 222 F.3d 845, 858 (10th Cir. 2000); *Nemkov v. Chicago Hare Corp.*, 592 F.2d 351, 354 & n.2 (7th Cir. 1979). At any rate, federal law likewise refuses to apply laches in a lawsuit presenting purely legal claims. *Id.*

[5]Richard was already sole owner of Mark IV and had been since before the Agreement was entered. (Richard Affidavit, ¶ 4; Doc. 85 at 16). Thus, Hartford merely wanted the status quo ante to continue. The status quo ante, of course, included Shirley as an indemnitor.

(emphasis and internal quotes omitted).[6]

### D. Executory Contract.

Shirley notes that an executory contract may be modified by the parties without any consideration other than mutual assent, and she argues that the Agreement was executory. (Doc. 85 at 16, ¶ 52). As discussed in Part II.C, even if this is so Shirley has no evidence that the parties mutually assented to relieving her of her obligations under the Agreement.

Shirley also asserts that the Agreement has no term for duration and is therefore terminable at will by either party. (Doc. 85 at 16, ¶ 52). According to her single authority, an indemnity contract "continues in force only during such time as is expressly or impliedly provided for in the contract." *Henderson v. Croom*, 403 F. Supp. 668, 671 (N.D. Ala. 1975) (internal quotes omitted). Only if no time is expressly or impliedly provided for is the contract terminable at will. *Id*. Here, the Agreement provides that it "is a continuing Surety Agreement which remains, unless cancelled in accordance with the provisions hereof, in full force and effect as to all Indemnitors with respect to each

---

[6]Shirley believes she has evidence that Hartford has released other indemnitors without a written request for release. (Doc. 85 at 17, ¶ 54; *id*. at 23, ¶ 68). Perhaps she does, but the question is not whether an oral release is possible but whether there is evidence that it occurred in her case. As discussed in text, there is no such evidence.

The only case Shirley mentions in support of release, (Doc. 85 at 22, ¶ 67), does not involve a release. Whatever case Shirley intended to cite, her discussion of it makes clear that it does not support finding a genuine issue of material fact as to release in this case.

Finally, Shirley asks (without answer or discussion), "Does the Hartford's knowledge of the divorce create a duty in the Hartford to release Shirley Jenkins from the General Indemnity Agreement?" (Doc. 85 at 16, ¶ 53). Rhetorical questions do not an issue make, and the Court will not consider whether Hartford had a duty to release Shirley even absent an agreement to do so. *See, e.g., Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005) ("[A] passing reference to an issue in a brief [is] insufficient to properly raise that issue.").

and every Bond issued hereunder." (Doc. 75, Exhibit A at 1, ¶ I). Shirley has not attempted to show that an indemnity agreement with such language is terminable at will. Nor has she demonstrated that Alabama adopts the rule invoked in *Henderson*. Nor has she offered evidence that she terminated her participation in the Agreement and that she did so before her liability for the McCorvey dispute attached.[7]

### E. Unilateral Mistake.

Shirley argues that she did not realize the Agreement would continue after her divorce, and she concludes that this establishes a unilateral mistake. (Doc. 85 at 20, ¶ 59). She provides no legal authority concerning unilateral mistake, and no argument save the conclusory statement above. That alone is sufficient grounds to reject her position, but there is more.

As best the Court can determine, unilateral mistake is a meaningful concept only in the context of reformation, and even there it is an insufficient ground to support reformation. When a contract does not truly express the intention of the parties, either through fraud, mutual mistake, or mistake of one party which the other at the time knew or suspected, the contract can be reformed to correct the error. Ala. Code § 8-1-2. But unilateral mistake does not come within Section 8-1-2. *EBSCO Industries, Inc. v. Royal Insurance Co.*, 775 So. 2d 128, 131 (Ala. 2000).

### F. Disproportionate Bargaining Power.

According to Richard, he asked Shirley to sign various documents to "protect the

---

[7]Shirley wonders whether Hartford's knowledge of her divorce from Richard can be "considered a notice of cancellation of or modification to an executory contract which has no time frame expressed in its terms?" (Doc. 85 at 17, ¶ 53). The Court does not answer hypothetical questions, and Shirley presents no issue for review simply by asking one. *Transamerica Leasing*, 430 F.3d at 1331 n.4. Nor has Shirley attempted to show that even an agreement terminable at will can be terminated without any expression of that will by the one desiring termination.

Hartford in case I gave her money and she ran off with it." According to Richard, Shirley did not read or understand the documents he asked her to sign. (Richard Affidavit, ¶ 7). According to both, Shirley was not involved with Mark IV and was a "stay at home mother for the majority of" her marriage to Richard. (*Id.*, ¶ 8; Shirley Affidavit, ¶¶ 3, 4). Shirley argues that Richard acted as the agent of Hartford in procuring her signature, that he used "disproportionate bargaining power" in doing so, and that she did not understand what she was getting into. (Doc. 85 at 19, ¶ 58; *id.* at 21, ¶ 66).

As with unilateral mistake, Shirley cites no legal authority for her argument, and the Court will not supply the deficiency. The Court does note that, "[o]rdinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, [s]he will be held to be on notice of all the provisions contained in that contract and will be bound thereby." *Carraway v. Beverly Enterprises, Inc.*, 978 So. 2d 27, 32 (Ala. 2007) (internal quotes omitted). Whatever the deficiencies of Richard's explanation of the Agreement, and whatever "bargaining power" he held over his wife, these cannot be attributed to Hartford absent evidence that he served as Hartford's agent, and Shirley suggests no evidence to support this highly unlikely possibility.

### G. Bad Faith.

"[I]ndemnitors can defeat a surety's right to recover under indemnity provisions by demonstrating either fraud of lack of good faith on the part of the surety in discharging its obligations under the bond." *Frontier Insurance Co. v. International, Inc.*, 124 F. Supp. 2d 1211, 1214 (N.D. Ala. 2000). "In the suretyship context, lack of good faith carries an implication of a dishonest purpose, a conscious doing of wrong, a breach of a duty through motives of self-interest or ill will." *Id.* (internal quotes omitted). The parties agree this is a correct statement of Alabama law. (Doc. 85 at 12, ¶ 44; Doc. 105 at 6).

Shirley argues that the following evidences Hartford's bad faith: (1) Hartford knew of the divorce and that Richard was given full ownership of Mark IV; (2) Hartford did not

-10-

pursue the co-indemnitors (the Woodsons) under a predecessor indemnity agreement covering Mark IV; (3) Hartford allowed Mark IV to retain counsel and maintain its own defense of the McCorvey litigation, and Hartford shared counsel with Mark IV for most of the litigation; and (4) Hartford did not notify Shirley of the McCorvey claim or litigation for nine years. (Doc. 85, ¶ 57). As discussed below, Shirley has not shown that Hartford's alleged conduct creates a genuine issue as to bad faith.

As discussed in previous sections, that Shirley was divorced and that she had no ownership in Mark IV (she never had) did not serve to remove her as an indemnitor, and "[t]he desire to enforce a valid contract cannot be deemed bad faith."[8] The failure to pursue the Woodsons on the 1979 indemnity agreement is irrelevant, both because Shirley has presented no authority holding that an indemnitee has a duty to every indemnitor to pursue every other indemnitor, and because she has no evidence that the Woodsons were potential indemnitors on the McCorvey claim.[9] That both Mark IV and Hartford may have employed counsel to defend the McCorvey litigation does not reflect

---

[8]*United States v. 0.35 Acre of Land*, 706 F. Supp. 1064, 1073 (S.D.N.Y. 1988); *accord Cook v. Home Depot U.S.A., Inc*., 2007 WL 710220 at *5 (S.D. Ohio 2007).

[9]The 1979 indemnity agreement applies only to bonds "issued hereunder," (Doc. 91, Mahler Deposition, Exhibit A at 1, ¶ 1), and Shirley has identified no evidence that the bond on the Project was issued under the 1979 agreement. Nor has Shirley produced evidence that the Woodsons were not relieved of any responsibilities under the 1979 agreement. She claims that the Woodsons "did not make a request, written or otherwise, to be released" from the agreement, (Doc. 85 at 8, ¶ 28), but the evidentiary submissions she cites do not remotely support that proposition. At most they show that Hartford has retained no copy of a written request (which would now be over 30 years old) and that a Hartford employee (whom she admits did not work for Hartford in 1980, (Doc. 85 at 20, ¶ 62)) does not know if they sought release. Elsewhere, Shirley cites the testimony of a Hartford representative who actually worked with Mark IV, (*id*. at 17, ¶ 54), but his inability to recall a written request from the Woodsons for release some 30 years previously is scarcely evidence that none was made, and it certainly does not rule out an oral request.

bad faith sufficient to preclude all indemnity,[10] although it may raise questions as to the recoverability of the duplicate fees.[11]  Finally, Shirley identifies no case imposing a duty on the indemnitee to provide notice to indemnitors, and various cases reject the proposition that failure to give notice to an indemnitor can constitute bad faith.[12]

**H.  Negligence.**

Without elaboration, Shirley suggests that Hartford is guilty of "negligent breach of duty," (Doc. 85 at 11, ¶ 42; *id*. at 14, ¶ 48), and she cites the rule that "[a]n agreement by one person to indemnify another for the other's negligent conduct is enforceable only if the indemnity provisions are unambiguous and unequivocal." *City of Montgomery v. JYD International, Inc*., 534 So. 2d 592, 594 (Ala. 1988).  (Doc. 85 at 11, ¶ 42).  The problems with her argument are many.

First, Shirley fails to identify the conduct she considers to be negligent, and the

---

[10]*See, e.g, Kilgore v. Union Indemnity Co*., 132 So. 901, 902 (Ala. 1931) ("When a surety is sued for the malfeasance of a principal, who asks to be allowed to defend with his own counsel, the surety may need legal advice in the exercise of a wise and just discretion in the matter.").

[11]*See Western Surety Co. v. Bradford Electric Co*., 483 F. Supp. 2d 1114, 1120-21 (N.D. Ala. 2007).

To the uncertain extent Shirley suggests that Hartford owed her a duty not to allow Mark IV to represent its own interests in the lawsuit, her position is similarly unsupported.  On the contrary, "the surety has no duty to represent the interest of the principal ...." *Postlewait v. Personal Service Insurance Co.*, 1980 WL 351148 at *1 (Ohio App. 1980).

[12]*E.g., Travelers Indemnity Co. v. Harrison Construction Group Corp*., 2008 WL 4725970 at *5 (E.D.N.Y. 2008) ("'[A]bsent a specific provision in the indemnification agreement, an indemnitee is *not required* to give notice of claims on the underlying surety bond to the indemnitor' in the first place.") ( quoting *Republic Insurance Co. v. Real Development Co.*, 554 N.Y.S.2d 574, 575 (N.Y. App. Div. 1990) (emphasis in original); *United States Fidelity & Guaranty Co. v. Bilt-Rite Contractors, Inc*., 2005 WL 1168374 at *7 n.16 (E.D. Pa. 2005) ("[C]ourts have found the fact that a surety made payments without giving notice to the indemnitor is not evidence of bad faith.").

Court will not engage in guesswork on her behalf. To the uncertain extent she relies on the conduct made the basis of her bad faith claim, the discussion in Part II.G reflects her failure to demonstrate the existence of any duty, the breach of which could constitute negligence.

Second, Shirley has not addressed the Agreement and explained how its language fails to comply with *JYD*. Again, the Court will not undertake the exercise for her. Third, she has not shown that *JYD* applies in the context of indemnity agreements with a surety. On the contrary, and as her own cited case reflects, "[t]he only exception [to a surety's recovery for payments made] arises when the payment has been made through fraud or lack of good faith on the part of the surety," and "even gross negligence cannot support a finding of bad faith." *Frontier Insurance*, 124 F. Supp. 2d at 1213-14 (internal quotes omitted). This language would appear inconsistent with application of *JYD*, and Shirley cannot avoid the ramifications of her own authority simply by ignoring it.

**I. Estoppel.**

Shirley asserts that dragging out the McCorvey litigation for years, failing to settle it before trial, and not giving her notice of the litigation, all increased the amount of the eventual award in favor of McCorvey and the amount of Hartford's indemnity demand and therefore damaged her. She concludes that "Hartford's delay" caused her this damage and "leads to estopple [sic] of Hartford's claim." (Doc. 85 at 18, ¶ 56).[13]

Shirley omits all legal discussion of the requirements for an estoppel to arise, but it is plain she cannot establish an estoppel here. "[F]or the doctrine of estoppel to apply, the defendant must prove a change in position in reliance upon an act or omission of the other party." *First Alabama Bank, N.A. v. Martin*, 425 So. 2d 415, 424 (Ala. 1982). Because Shirley has not even alleged that she changed her position in reliance on Hartford's

---

[13]Shirley mentions two additional circumstances she dislikes, (*id.*), but they do not reflect delay.

alleged delay, much less presented evidence in support, her defense necessarily fails.

## III. Damages.

The McCorvey litigation ended in a judgment against Hartford and Mark IV in the amount of $192,632.21. (Doc. 75, Mahler Affidavit, ¶ 4 & Exhibit B). In August 2009, judgment was entered in favor of Hartford and against Mark IV and Jenkins in the amount of $241,674.25. (*Id.*, ¶ 6 & Exhibit C). Hartford says that, due to additional legal expenses since August 2009, as of April 14, 2010, "the total loss, cost, and expense, exclusive of interest, incurred by virtue of Hartford's issuance of bonds on behalf of Mark IV Constructors is $261,649.52." (*Id.*, ¶ 7). Hartford requests judgment in this amount, plus post-judgment interest at 12%. (Doc. 72 at 2; *id.*, Attachment at 2). In brief, Hartford requests judgment in the amount of $261,649.22, "with leave of the Court to approve additional loss, cost and expense resulting from this case." (Doc. 73 at 8). This is the entirety of Hartford's treatment of damages.

Although the judgment was for $192,632.21, McCorvey agreed to take an even $190,000 in full settlement. (Mahler Deposition at 44). Hartford's right to recovery from Shirley is uncontroverted to this extent. However, it is impossible to tell from Hartford's presentation whether the other figures it utilizes have been reduced to reflect the difference between the judgment amount and the amount Hartford paid in settlement.[14]

Hartford has not established the basis of the judgment in its favor against Mark IV and Richard. While it likely represents the amount of the McCorvey judgment, plus interest, fees and costs, without record evidence Hartford has not met its burden.

Shirley concentrates most of her fire on the reasonableness of the fees and

---

[14]Shirley suspects Hartford actually paid only $180,000 as full settlement, (Doc. 85 at 10, ¶ 39), but she has offered no evidence to prove the point.
Shirley attacks Hartford's payment of McCorvey only for lack of good faith. As discussed in Part II.G, there is no genuine issue of material fact as to whether Hartford paid McCorvey in good faith, and Shirley may not resist Hartford's demand on that basis.

expenses demanded by Hartford.

> In sum, an indemnity agreement is not a blank check; it does not entitle the surety company to reimbursement for legal expenses which are unreasonable or unnecessary. ... Thus, the weight of authority allows reimbursement for legal costs under the terms of an indemnity contract only if it is necessary for the surety to retain separate counsel, if the amount of the fees claimed is reasonable, and if the surety has acted in good faith toward the bond principal.

*Jackson v. Hollowell*, 685 F.2d 961, 966 (5th Cir. 1982); *accord Western Surety Co. v. Bradford Electric Co.*, 483 F. Supp. 2d 1114, 1120-21 (N.D. Ala. 2007). The usual scrutiny of fees and expenses must also be employed. *Id*. at 1121. Shirley invoked these principles, (Doc. 85 at 12-13, ¶ 45), Hartford did not respond, and the Court adopts them for use in this case.

Hartford has not met its burden under these principles. As noted, Hartford has not even established what its judgment against Mark IV and Jenkins represents. If $192,632.21 reflects the McCorvey judgment, that leaves almost $50,000 for interest, fees and expenses. Since the second judgment came within three months of the first, interest cannot be high, so the lion's share is probably fees and expenses. Even if Hartford was justified in hiring separate counsel at all, it has not shown that the amount of fees and expenses it incurred in the McCorvey litigation was reasonable.[15]

Shirley does not dispute that Hartford may recover its fees and expenses in this litigation, but she repeats that Hartford must first show that those fees and expenses were reasonable. (Doc. 85 at 21, ¶¶ 63-64). The Court agrees, and Hartford has not attempted to do so.

Shirley also questions whether the interest Hartford is charging is reasonable. (Doc. 85 at 21, ¶ 63). Since the Court has not been advised of the amount of interest

---

[15]Since Shirley was not a participant in the McCorvey litigation, it is doubtful she could be bound by any express or implicit determination of reasonableness by the state judge who entered the judgment against Mark IV and Richard.

Hartford is charging, the rate charged, or the basis of the rate (the Agreement appears to be silent), it cannot evaluate the propriety of Hartford's claim of interest.

The burden is on Hartford to establish the amount of its payment to McCorvey and the amount and reasonableness of the legal fees and expenses it has incurred in the McCorvey litigation and this case. Hartford has met this burden with respect to the $190,000 it has paid McCorvey, but not otherwise.

## CONCLUSION

For the reasons set forth above, Hartford's motion for summary judgment is **granted** with respect to Shirley's liability and **granted** with respect to damages in the amount of $190,000. The motion is in all other respects **denied**.[16]

By virtue of the Court's rulings, this case has shrunk to one concerning the amount of fees, expenses and interest Hartford should recover from Shirley. Hartford and Shirley are **ordered** to confer in good faith for the purpose of resolving the issue of fees, expenses and interest and to file a joint report on the results of their conference on or before **June 24, 2010**.

DONE and ORDERED this 9th day of June, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[16] Hartford's motion to strike, (Doc. 106), is **denied as moot**, because the Court did not rely on some of the challenged testimony and relied on other sources with respect to the balance, and because the challenged testimony did not result in aa ruling for Shirley in any event. Likewise, Shirley's motion to strike, (Doc. 109), is **denied as moot**, because the Court did not rely on the evidence the motion challenges.